UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHELSEA L. CHARPENTIER,        :
        Plaintiff,        :
                  :
        v.             :        C.A. No. 12-312S
                  :
CAROLYN W. COLVIN, ACTING      :
COMMISSIONER OF SOCIAL SECURITY,  :
        Defendant.      :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      This administrative appeal focuses on credibility.  The diagnosis of Plaintiff Chelsea L.

Charpentier's ("Plaintiff") alleged impairment, fibromyalgia,[1] and her claimed limitations are

based almost entirely on her subjective statements – there is a dearth of confirming objective

medical evidence.  Further, the administrative record is riddled with evidence on which an

adverse credibility finding could have been based.  Nevertheless, the grave deficiencies in the

skimpy opinion of the Administrative Law Judge ("ALJ") require remand for a do-over.

      Plaintiff, currently twenty-eight years old, claims to suffer headaches and debilitating

neck and back pain from two minor car accidents[2] that she claims left her bedridden and

incapable of working or even completing basic tasks like folding laundry.  The matter is before

the Court on the Motion of Plaintiff for reversal of the decision of the Commissioner of Social

---

[1] Fibromyalgia literally means muscle fiber pain; it affects soft tissues and may cause a psychological disorder or abnormal response to stress. Typically patients describe deep aching, throbbing or a burning feeling, and they may feel totally drained of energy.  It often includes trouble sleeping, headaches, chest pains, dizziness and symptoms of irritable bowel syndrome, with periods of especially severe pain alternating with times of little or no discomfort. May v. Barnhart, No. 06-CV-133 SM, 2007 WL 203986, at *3-4 (D.N.H. Jan. 25, 2007).

[2] Based on the description in the medical records, Plaintiff was a passenger in a stationary or slow-moving vehicle in both accidents; the vehicle that caused the crash was travelling less than ten miles per hour in the first and five miles per hour in the second.  Tr. 264, 266, 340, 467.

Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security

Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act").  Plaintiff contends that the ALJ's decision is

lacking in detail so as to be practically unreviewable, is infected by errors of law and is not

supported by substantial evidence.  Defendant Carolyn W. Colvin ("Defendant") has filed a

Motion for an order affirming the Commissioner's decision.

This matter has been referred to me for preliminary review, findings and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I find that the Commissioner's determination

that Plaintiff is not disabled contains multiple errors of law.  The ALJ's Step Two finding of

impairments is not consistent with the medical evidence.  More importantly, at Step Four, his

adverse credibility finding lacks reference to reasons.  This error is compounded by the

erroneous rejection of the treating physician's opinion based on the lack of objective evidence

when the impairment, fibromyalgia, by its nature does not exhibit objective signs.  Also

erroneous is the ALJ's residual functional capacity ("RFC") finding, which is inconsistent with

the only medical evidence of limitations on the ability to work.  Despite a record with

considerable support for the finding that this Plaintiff lacks credibility and is likely not disabled,

such a quantum of error is not harmless.  Accordingly, I recommend that Plaintiff's Motion to

Reverse or Remand Commissioner's Decision (ECF No. 10) be GRANTED, the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be DENIED,

and the matter be REMANDED to the Commissioner for further proceedings consistent with this

Report and Recommendation pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.     Background Facts

Plaintiff, who attended college,[3] was twenty-four years old on July 27, 2009, the date of
the first car accident and the alleged onset of her disability.  Tr. 25, 39-40, 224; ECF No. 10-1 at
3-4.  From age 15 until July 2009, she worked at a variety of jobs, including assistant retail
manager, telemarketer, boat stewardess, waitress and bookstore cashier.  Tr. 172, 191, 198.
Since then, she has not had any meaningful work.[4]  Throughout her alleged disability, virtually
all of the symptoms allegedly resulting in limitations so severe as to render her disabled under
the Act are subjective.  Because her subjective reports changed markedly after her application
was denied at the administrative level, the following explication is broken into two parts: the first
is focused on the period from onset until reconsideration was denied by the Commissioner, and
the second on the period from the denial of reconsideration until the ALJ's decision.

        i.     Medical Treatment from Onset to Denial of Reconsideration

During the period of alleged disability beginning with the first car accident until she was
denied benefits at the administrative level in November 2010, Plaintiff's physical complaints
were "[c]hronic pain in head, neck, back, headaches."  Tr. 170.

After the first accident, Plaintiff visited the emergency room complaining of mild to
moderate neck pain.  Tr. 266.  There was a finding of "cervical strain;" three x-rays of her neck
revealed no soft tissue swelling or fractures and no acute abnormality.  Tr. 267-68, 346.  She was
discharged the same day in stable condition and advised to follow up for further treatment if
necessary.  Tr. 267.  One week later, she saw a nurse practitioner complaining of muscle spasms
in her neck and upper and lower back, and dizziness, nausea and diarrhea.  Tr. 259.  The nurse

---

[3] Plaintiff attended college through 2007; she is just six credits shy of graduation.  Tr. 76, 171, 288.

[4] At the hearing, Plaintiff testified that she had briefly done telemarketing for her chiropractor in 2009 and more
recently has started her own business selling women's products.  Tr. 38-39.  She claims that pain interfered with
both efforts.  Tr. 40.

found that her neck was supple and observed no evidence of unusual anxiety or depression. Tr. 260. Plaintiff was told to use ice and heat for her low back pain and that her nausea was probably the result of a stomach bug. Id. Much of the medical treatment Plaintiff received during this period related to a pilonidal cyst, which caused pain, difficulty sitting and required surgical intervention, but is unrelated to any of the complaints for which she claims disability. Tr. 250, 253, 421, 424. Apart from the cyst, the medical records following the first accident do not reflect any serious issues.

The second accident, on April 10, 2010, was equally uneventful. Again, Plaintiff went to the emergency room complaining of neck and lower back pain. The record mentions cervical sprain and mild neck distress but no other ailments; she was discharged the same day in stable condition. Tr. 264-65, 340, 464, 467. Physical therapy was prescribed but she attended only three times before giving up. Tr. 310, 312-16. At an appointment in April 2010, she told a provider that she is in good health and "performs light exercise on a regular basis." Tr. 467. Follow up for her headaches[5] resulted in an MRI and neurological examination concluding that she had an "[e]ssentially normal" brain with no signs of acute problems. Tr. 292-93, 306. The only vaguely significant finding is an MRI done on July 17, 2010, which showed "[m]inor disc bulging most prominent at L3-4 where there may be a small superimposed central protrusion," but also confirmed the absence of pinched nerves ("[n]o spinal canal stenosis or narrowing of the neural foramina"). Tr. 282-83. No follow up was recommended.

The agency non-examining review physicians confirmed the absence of any serious physical impairment. Dr. Jao's June 2, 2010, record review resulted in the conclusion that

---

[5] The only headache during this period related to a "sore throat." Tr. 256. Plaintiff's counsel points to complaints of headaches in the period prior to the onset of disability as corroboration that they were an ongoing condition. ECF No. 10-1, at 4. However, the only cited reference to treatment for symptoms including a headache is for a respiratory infection. Tr. 366.

Plaintiff had experienced a neck strain, but with no negative neurologic findings, he found no severe physical impairment.  Tr. 272.  This conclusion was endorsed on October 2, 2010, by Dr. Gopal, who wrote, "[c]ondition is not severe."  Tr. 317.  Even the interviewer who took Plaintiff's application observed no difficulties; the notes indicate, "No physical sign of dib."[6]  Tr. 180.

These records contrast sharply with the histrionic tone of Plaintiff's written application regarding her subjective perception of her condition during this period.  She prepared an eighteen-page handwritten report that asserted that the pain in her neck, back, head, shoulders, leg, wrist, spine and muscles was so severe she could not style her hair, shave her legs or armpits, bend down, prepare meals, carry groceries or do house work, including laundry, vacuuming or dishes.  Tr. 191, 199, 204-06.  She claimed to spend most days "laying in bed & on the couch" and that severe pain precluded all exercise, camping and sexual activity.  200, 204, 208.  All three of the latter claims are demonstrably false: the records reveal that, during the same period, she sought medical treatment for the effects of rampant sexual activity, Tr. 300, 303, 407, 410, 412, 449, and camping (poison ivy), Tr. 298-299, 300, while she told her chiropractor that she regularly performed light exercise.  Tr. 467.

During this period, Plaintiff did not seek or obtain any mental health treatment. Nevertheless, her providers repeatedly mention anxiety and depression and say that she is tearful. See, e.g., Tr. 247, 249, 292.  As a result, on July 23, 2010, Plaintiff was referred by the Commissioner for a clinical diagnostic interview of her mental status with Dr. Mark Sokol, Ed.D, during which she claimed inability to work based on the two car accidents, and complained of physical and emotional trauma, fatigue and feelings of helplessness.  Tr. 287.

---

[6] Similarly, when interviewed again after she was denied initially, while her application was under reconsideration, the agency interviewer noted no observable signs of any mental or physical difficulties.  Tr. 183.

When Dr. Sokol asked her to describe her symptoms, Plaintiff expressed anger: "I can't seem to get help. I can't believe that I'm here today just to get 300 dollars a month. This is stressing me out." He concluded that frustration and anger were her primary symptoms. Tr. 288. On mental status examination, she scored thirty out of thirty points; gait, posture and motor behavior were within normal limits, thought processes were coherent, and attention and concentration were intact. Tr. 289. Based on Plaintiff's feeling that she was unable to work and her frustration about her lack of success in collecting benefits, Dr. Sokol diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood and chronic pain. Tr. 289-90.

On November 4, 2010, Dr. James Carpenter, Ph.D., a non-examining agency consultant, completed a Psychiatric Review Technique Form, taking into account chronic pain, fatigue, depression and headaches. Tr. 318-31. He opined that Plaintiff had an affective disorder and a substance addiction disorder neither of which rose to the level of severe mental impairments; he found it significant that Plaintiff had no cognitive pathology, did not take any psychiatric medications and had refused mental health treatment, as well as that the medical record did not show evidence of impairment to autonomous psychological functioning. Tr. 318, 328, 330.

On November 5, 2010, the Commissioner denied Plaintiff's request for reconsideration and Plaintiff requested a hearing before an ALJ. Tr. 80.

ii.   <u>Medical Treatment After Denial of Reconsideration</u>

In November 2010 through January 2011, Plaintiff repeatedly saw Dr. Alexandre, her primary treating physician, with increasingly frantic subjective complaints of pain. Expressing frustration that "she was denied by disability," she appeared tearful and depressed. Tr. 386, 390, 393. Yet her physical examination was largely within normal limits, with no weakness or

difficulty with motor skills, although Dr. Alexandre observed some tenderness and limited range of motion in the neck and a decreased sensation in Plaintiff's right arm.  Tr. 396.

Based on Plaintiff's self-reporting, Dr. Alexandre referred her for another MRI, performed on December 11, 2010, which revealed "mild reversal of [the] usual curve in [the] upper cervical spine," but it was "[o]therwise unremarkable;" particularly, there was no evidence of disk protrusion, spinal stenosis or foraminal encroachment.  Tr. 334-35.  Also based on Plaintiff's self-reporting, in November 2010, for the first time**,** Dr. Alexandre prescribed narcotic medication for the neck and back pain, while in December 2010, for the first time,[7] she labeled Plaintiff's complaint as "chronic back and neck pain."  Tr. 390, 394, 397 ("now worsening").  She opined that it was "likely myofascial in nature causing severe pain and dysfunction and affecting her mood," and recommended acupuncture and Vitamin D.  Tr. 387-88, 391.  For treatment of the neck pain, Plaintiff was referred to Dr. Katherine Holmes, whose treatment notes describe the severity of Plaintiff's pain as "mild."  Tr. 384.  Dr. Alexandre's contemporaneous notes also reflect concern about depression and anxiety and Plaintiff's refusal of medication to address her mood.  Tr. 387.

On February 16, 2011, Plaintiff wrote a letter in support of her disability application.  Tr. 460.  It requested an expedited hearing, claiming "I am currently homeless. . . .  I have a very difficult time concentrating.  I suffer from a pinched nerve in my lower back . . . I suffer from Carpal Tunnel."  Id.  This letter is pertinent to Plaintiff's credibility because at least some of its content appears to be false.  For example, the two MRIs in the record both ruled out any pinched nerve.  Tr. 283, 334-35.  No medical provider ever suggested that Plaintiff might have carpal tunnel syndrome; when she complained of wrist pain, Dr. Alexandre suggested a wrist guard, but

---

[7] This is the first reference by a treating source.  Dr. Sokol, the consulting psychologist, notes "chronic pain" at Axis IV.  Tr. 290.

did not order a diagnostic work-up for carpal tunnel.  Tr. 480.  Plaintiff's only mental status

examination found concentration "intact."  Tr. 289.  Finally, the claim of homelessness, while

conceivably accurate in the moment, seems inconsistent with the rest of the record.  See Tr. 6,

38, 94, 108, 198, 205.

The possibility of fibromyalgia enters Plaintiff's record for the first time in March 2011:

Dr, Alexandre records in her notes, "Discussion of possibility of pt having fibromyalgia, she

offers that she has urinary symptoms at times, jaw discomfort.  Will look into further at

upcoming appt."  Tr. 477.  Dr. Alexandre observed tenderness, trigger points and muscle spasms

in Plaintiff's spine, and pain along the neck, shoulders and knees when palpated.  Tr. 477, 482.

Dr. Alexandre described the problem as "[l]ikely muscoskeletal vs pain syndrome" and "chronic

and ongoing at this point, lasting longer than 3 mo[nths]," leading to the conclusion that Plaintiff

"may in fact have fibromyalgia."  Tr. 477, 482.  Dr. Alexandre's notes also state that she was

"hesitant to label her with this diagnosis until further testing can be done."  Tr. 482.  By May

2011, Dr. Alexandre referred Plaintiff to a rheumatologist "to see if he concurs with diagnosis of

fibromyalgia."  Tr. 496.  In June and July 2011, while waiting for the appointment to see if a

rheumatologist would confirm the diagnosis of fibromyalgia, Dr. Alexandre's notes state, "Pt

here for acute visit due to worsening pain all over her body.  She has upcoming rheum appt.  She

may have fibromyalgia and we are waiting for this evaluation."  Tr. 502.  Meanwhile, she told

Plaintiff, "treating her anxiety and depression are key to treating her pain."  Yet Plaintiff

continued to refuse both medication to treat mental health issues and counseling.  Tr. 499.  The

treatment notes say, "I will cont to encourage her to have mental health treatment."  Id.

Still without confirmation of the tentative diagnosis of fibromyalgia, on July 14, 2011,

Plaintiff visited Dr. Alexandre to get her to fill out forms in connection with the disability

application.  Tr. 505.  During this visit, Dr. Alexandre observed that Plaintiff was "markedly less anxious;" she spoke with Plaintiff, "discussing her disabilities and limitations with regards to lifting, reaching, standing, sitting, etc."  Id.  On the forms, Dr. Alexandre opined that Plaintiff's pain is "severe" and checked boxes indicating that Plaintiff could not sit, stand or walk for any amount of time, except that she could sit and/or stand at her own discretion for up to two hours in a work day.  Tr. 485-86.  She wrote "fibromyalgia (working diagnosis)" in the blank for the response to whether the pain was caused by a medically-determined impairment, although her treatment notes state that the appointment with the rheumatologist was coming up "to see if this specialist is in agreement that she possibly has fibromyalgia."  Tr. 485, 505.  Inexplicably checking a box indicating that a psychological evaluation of Plaintiff had been obtained,[8] Dr. Alexandre responded to questions about Plaintiff's psychiatric status and circled mostly "moderately severe" and "severe" for the limitations it would impose on her ability to do full time work.  Tr. 487-88.  Her notes from the visit state that the pain is "disabling to her and she is unable to work."  Tr. 507.

On August 9, 2011, Plaintiff finally saw the rheumatologist, Dr. Rahman.  He did not confirm the diagnosis of fibromyalgia.  Tr. 512-13.  Rather, his clinical impression was chronic pain syndrome.  Dr. Rahman observed that Plaintiff was very emotional; he found some tender points in her shoulders, elbows and knees but also a normal range of motion and no signs of synovitis.  Tr. 513.  He reviewed Plaintiff's MRIs and noted some minor disc bulging, but observed that both MRIs were unremarkable.  Id.  Laboratory results showed her rheumatoid factor was normal.  Id.  He explained to Plaintiff that "a name [of the diagnosis] is not going to make a difference . . . and [s]he basically has chronic pain and does not have anything that can be

---

[8] This reference is puzzling because there is no psychological evaluation in the medical record.  The closest is the clinical diagnostic interview performed by the agency psychologist, Dr. Sokol.  Tr. 287.  But it is inconsistent with the limitations that Dr. Alexandre recorded on the forms.  Compare Tr. 287-89, with Tr. 487-88.

fixed or corrected easily." Id.  He opined that "she seems to be stuck in a dizzy wheel and having difficulty getting out of it." Id.  Dr. Rahman recommended a regular exercise program, and "encouraged her to go back to work" because "[s]he is not likely to improve unless her life changes." Id.  He concluded she clearly needed help and recommended a psychiatrist or psychologist and medication.  Id.

On August 26, 2011, Dr. Alexandre filled out a supplemental fatigue and pain questionnaire, opining Plaintiff could not function in any full time work setting.  Tr. 514.

## II.   Travel of the Case

Plaintiff filed her DIB and SSI applications on May 3, 2010, alleging onset as of July 27, 2009.  The Commissioner denied Plaintiff's claims initially and on reconsideration.  Following a hearing on August 29, 2011, in a decision dated September 6, 2011, the ALJ found that Plaintiff was not disabled under the Act.  Tr. 20-28.  Plaintiff requested review by the Appeals Council, submitting a letter in support; the request was denied on February 28, 2012, making the ALJ's decision the final decision of the Commissioner subject to judicial review.  Tr. 1-4, 224-27.

## III.   The ALJ's Hearing and Decision

Originally, the hearing was scheduled to be conducted by videoconference with Plaintiff in New Bedford.  Prior to the hearing, Plaintiff, through counsel, advised the ALJ that she preferred to appear in person at the hearing rather than by videoconference.  As a result, the hearing was set to be held in Boston on August 29, 2011.  Perhaps due to Hurricane Irene or perhaps due to confusion, the ALJ, Plaintiff and her counsel appeared together in Boston, while the hearing monitor was in New Bedford, connected by videoconference.  Tr. 36, 221.  The vocational expert was at home due to the hurricane and testified by telephone.  Tr. 36.  Midway through the hearing, the vocational expert and hearing monitor lost the connection for ten

minutes and the ALJ asked Plaintiff's counsel to have Plaintiff repeat the testimony.[9]  Tr. 59-60.

Plaintiff and her counsel did not object to the brief do-over, to the hearing monitor in New

Bedford or to the vocational expert testifying at home, which was necessitated by the storm.  Tr.

36-37, 59-60.

At the hearing, most of the lengthy testimony focused on Plaintiff's alleged ailments and

inability to perform daily tasks.  Tr. 40-59, 60-71.  Plaintiff testified she could not continue

working after her first car accident because of "pain all over my entire body," including in her

neck, joints and nerves, shooting pain down her shoulder that she could "only assume is from

nerve damage," and "sciatic nerve pain."  Tr. 40, 41-42, 49.  She said she has five migraine[10]

headaches a month, which prevent her from getting out of bed, frequent bouts of depression and

difficulty sleeping; she told the ALJ that the latter difficulty is "apparently a symptom of

fibromyalgia."  Tr. 45, 53, 55.  When discussing how these ailments affect daily activities,

Plaintiff alleged extreme difficulty doing anything other than lying down – basic household tasks

were out of the question, such as cleaning dishes and folding laundry.  Tr. 49, 57-58.

The ALJ propounded three hypothetical questions to the vocational expert.  First, based

on his RFC determination, the ALJ asked the expert to assume that Plaintiff was capable of

performing a full range of light work; in response, he testified she could return to her previous

jobs as a telemarketer, photographer and assistant store manager.  Tr. 73.  Second, the ALJ asked

the vocational expert to focus on Dr. Alexandre's evaluation, particularly her opinion that

---

[9] What actually happened during this interruption is not clear.  However, since the record of the testimony at the hearing appears complete in that Plaintiff testified until the reporter interrupted to say she had been cut off, at which point Plaintiff repeated the last few answers, apparently only the vocational expert missed approximately ten minutes.  The record also demonstrates that Plaintiff was remarkably successful in repeating her testimony, which he was able to hear.  Tr. 57-62.

[10] While the term "migraine" is used by Plaintiff in her testimony and occasionally appears in the medical record, Tr. 45-46, 491, there is no evidence that Plaintiff's headaches were ever categorized as migraines.  See Demyer v. Astrue, No. 5:09CV14-J, 2009 WL 3710726, at *5 (W.D. Ky. Nov. 4, 2009) (diagnosis of migraines is distinguished from other types of headaches).

Plaintiff would be absent from work more than four days a month; in response, he testified there would be no work. Tr. 73-74. Finally, when asked to assume credibility, he testified that there would be no work. Tr. 74.

In a brief decision, the ALJ began with the finding that Plaintiff met the insured status requirements of the Act through December 31, 2013. Tr. 25. He then proceeded through the familiar five-step inquiry to determine the merits of Plaintiff's claim. Id. After concluding that Plaintiff was not engaged in substantial gainful activity at Step One, the ALJ proceeded to Step Two, where he found that Plaintiff's only severe impairment is fibromyalgia. Id. There is no discussion of any of Plaintiff's other claimed impairments. At Step Three, the ALJ determined that Plaintiff's impairment did not meet or medically equal any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26.

At Step Four, based on "careful consideration of the entire record," the ALJ found that Plaintiff had the RFC to perform the full range of light work. Tr. 26-27. In making this determination, the ALJ considered Dr. Alexandre's opinion as to Plaintiff's limitations, but did not give it the weight normally afforded to a treating source because it is "not supported by objective medical evidence . . . There was no evidence of any disorder of the spine which could reasonably be expected to cause the level of pain alleged." Tr. 27. He also discounted Dr. Alexandre's assessment that Plaintiff could not sustain full time work as a determination reserved to himself. Id. On the critical issue of Plaintiff's credibility, the ALJ dedicated a single sentence to his determination that Plaintiff's description of the intensity, persistence and limiting effects of her pain were not credible to the extent alleged. Id. At Step Five, the ALJ determined that Plaintiff was capable of performing her past relevant work as a photographer, telemarketer and assistant manager of a retail shop. Tr. 28.

12

IV.   **Issues Presented**

Plaintiff contends that the decision of the Commissioner that she is not disabled within

the meaning of the Act is not supported by substantial evidence in the record and is infected by

legal error for the following reasons:

1. The ALJ's finding that Plaintiff's ailments of anxiety, depression and headaches were not severe at Step Two is not supported by substantial evidence.

2. The ALJ's RFC determination is infected by legal error because:

   a. the ALJ failed to properly consider Plaintiff's statements about pain and her resulting limitations;
   b. the ALJ failed to provide good reasons for rejecting the opinion of Dr. Alexandre, the treating physician; and
   c. the ALJ's RFC was not supported by substantial evidence because it was not based on the opinion of any medical source.

3. The ALJ committed legal error by failing to comply with Plaintiff's request to testify in person at her hearing.

V.   **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v.

Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.

Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F.

Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by

substantial evidence, the Commissioner must be affirmed, even if the Court would have reached

a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819

F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991);

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. §§ 404.1529(a), 416.929(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).  To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant

14

to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th

Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient

for district court to find claimant disabled).  Where the Court cannot discern the basis for the

Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of

the basis for the decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On

remand under Sentence Four, the ALJ should review the case on a complete record, including

any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for

ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a Sentence

Four remand, the Court enters a final and appealable judgment immediately, and thus loses

jurisdiction.  Freeman, 274 F.3d at 610.

## VI.   Harmless Error

"A[n] ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

determination.'"  Rivera v. Comm'r of Soc. Sec. Admin., No. 12-1479, 2013 WL 4736396, at

*11 (D.P.R. Sept. 3. 2013) (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)).  If

the likely outcome on remand is clear and the same as that reached by the ALJ, the error is

harmless and the court may uphold the denial of benefits.  Ward v. Apfel, No. 98-168-B, 1999

WL 1995199, at *3 (D. Me. June 2, 1999).  Error is not harmless "[w]hen an agency has not

considered all relevant factors in taking action, or has provided insufficient explanation for its

actions . . ."  Lyons ex rel. X.M.K.L. v. Astrue, No. 12-30013, 2012 WL 5899326, at *7 (D.

Mass. Nov. 26, 2012) (quoting Seavey, 276 F.3d at 12).  The ALJ has "an obligation to the

claimants and to the reviewing court to make full and detailed findings to support his

conclusions."  Lacroix v. Barnhart, 352 F. Supp. 2d 100, 107 (D. Mass. 2005).  Thus, it is

reversible error when the ALJ does not give good reasons for discounting the opinion of the

treating physicians, even if the court can find good reasons to discount the opinion.  Sargent v. Astrue, No. 11-220 ML, 2012 WL 5413132, at *9 (D.R.I. Sept. 20, 2012).  Similarly, if the ALJ finds that the claimant is not credible, he must fully explicate his reasons; if he does not, the court must reverse for the failure to comply with Avery, 797 F.2d 19, and SSR 96-7p, 1996 WL 374186 (July 2, 1996).  See Sargent, 2012 WL 5413132, at *12.

**VII.   Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511, 416.905-911.

**A.   Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly

16

conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir.

1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the

determination.  See Sargent, 2012 WL 5413132, at *7-8, 11-12 (where ALJ failed to point to

evidence to support weight accorded treating source opinion, court will not speculate and try to

glean from the record; remand so that ALJ can explicitly set forth findings).

   Where a treating physician has merely made conclusory statements, the ALJ may afford

them such weight as is supported by clinical or laboratory findings and other consistent evidence

of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must

nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and

the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical

evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in

the medical conditions at issue; and (6) other factors which tend to support or contradict the

opinion.  20 C.F.R §§ 404.1527(c), 416.927(c).  However, a treating physician's opinion is

generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).

   The ALJ is required to review all of the medical findings and other evidence that support

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of

disability.  20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ is not required to give any special

significance to the status of a physician as treating or non-treating in weighing an opinion on

whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545-

1546, 416.945-946), or the application of vocational factors because that ultimate determination

17

is the province of the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d); see also Dudley v.

Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

**B.      The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is

not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, if a claimant does not have any

impairment or combination of impairments that significantly limit physical or mental ability to

do basic work activities, then the claimant does not have a severe impairment and is not disabled.

Id. §§ 404.1520(c), 416.920(c).  Third, if a claimant's impairments meet or equal an impairment

listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. §§ 404.1520(d),

416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the

claimant is not disabled.  Id. §§ 404.1520(e)-(f); 416.920(e)-(f).  Fifth, if a claimant's

impairments (considering RFC, age, education and past work) prevent doing other work that

exists in the local or national economy, a finding of disabled is warranted.  Id. §§ 404.1520(g),

416.920(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but

the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144

(D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments and must

consider any medically severe combination of impairments throughout the disability

determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining

whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

### C.      Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### D.      Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  In determining whether the medical signs and laboratory findings show medical impairments which

reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's

six-part pain analysis and consider the following factors:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;
>
> 5. Functional restrictions; and
>
> 6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I.

Nov. 30, 2011).  An individual's statement as to pain is not, by itself, conclusive of disability.  42

U.S.C. § 423(d)(5)(A).  Guidance in assessing the credibility of the claimant's statement

regarding the severity of pain is provided by the Commissioner's 1996 ruling, SSR 96-7p. 1996

WL 374186.  Credibility of an individual's statements about pain or other symptoms and their

functional effects is the degree to which the statement can be believed and accepted as true; in

making this determination, the ALJ must consider the entire case record and may find that all,

only some, or none of an individual's allegations are credible.  Id. at *4.  One strong indication

of the credibility of an individual's statements is their consistency, both internally and with other

information in the record.  Id. at *5-6.

## VII.    Application and Analysis

### A.    Error at Step Two

The Social Security definition of "severe" for purposes of generating the list of Step Two

impairments contrasts markedly with the dictionary definition of the term – an impairment is

"severe" unless it is a slight abnormality, having no more than a minimal effect on a person's ability to work. Ramos v. Barnhart, 60 F. App'x 334, 335 (1st Cir. 2003) (per curiam). The First Circuit is clear that the "severity" requirement at Step Two is a *de minimis* policy, designed to do no more than screen out groundless claims. McDonald v. Sec. of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). The ALJ's finding of non-severe at Step Two, for an impairment as to which a claimant has sustained her burden, must be supported by substantial evidence and his reasons must be explained. Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Melius v. Colvin, No. 12-848, 2013 WL 5467071, at *3 (W.D. Pa. Sept. 30, 2013).

Here, treating physicians Dr. Alexandre and Dr. Rahman both recognized Plaintiff's psychiatric problems as requiring treatment, including medication (which Plaintiff consistently refused); Dr. Alexandre diagnosed and was treating depression and anxiety disorder. She characterized the anxiety and depression as "extreme," and opined that the psychiatric impairments caused severe and moderately severe limitations on Plaintiff's ability to work. Tr. 499, 502, 513. Examining psychologist Dr. Sokol confirmed the finding that Plaintiff had a mental health issue (adjustment disorder with anxiety and depressed mood), while the non-examining consultant, Dr. Carpenter, based his conclusion that her "affective disorder" was not severe on a file review limited to the record prior to the denial of reconsideration. The treating records of Dr. Alexandre and Dr. Rahman are sufficient to meet Plaintiff's burden of demonstrating that anxiety and depression are "severe" impairments for purposes of the Step Two finding, Anthony, 954 F.2d at 295, while the ALJ provides no explanation for his determination that they are non-severe. Dudics v. Astrue, No. C10-5501-TSZ, 2011 WL 884167, at *2 (W.D. Wash. Feb. 16, 2011) (when claimant meets burden to prove severe

impairment at Step Two, ALJ has duty to explain findings to support conclusion of non-severity).  The omission of anxiety and depression at Step Two is error.

Also troubling is the ALJ's decision at Step Two to focus on fibromyalgia, which Plaintiff apparently did not have, and to ignore chronic pain,[11] which was the operative diagnosis.  The focus on fibromyalgia, instead of chronic pain, potentially taints the rest of the analysis, where each of them calls for a particularized review based on the interplay of subjective and objective criteria.  Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009) (fibromyalgia lacks objective criteria; credibility particularly important); Avery, 797 F.2d at 29 (laying out factors to consider when limitations based on subjective pain symptoms); SSR 96-7p (laying out how to evaluate pain symptoms in light of credibility).  Whether this is error without harm because fibromyalgia and chronic pain syndrome are substantially similar turns on a medical conclusion that neither the ALJ nor this Court is qualified to draw.  Hicks v. Astrue, No. 09-393-P-S, 2010 WL 2605671, at *2 n.2 (D. Me. June 23, 2010) (as laypersons, neither counsel nor the court may conclude on its own that seemingly related diagnoses are the same).

The omission of "severe" impairments at Step Two may be harmless if the impairment is nevertheless considered in connection with the ALJ's RFC determination at a subsequent stage in the sequential analysis.  Hines v. Astrue, 11-CV-184-PB, 2012 WL 1394396, at *12-13 (D.N.H. Mar. 26, 2012).  Here, however, the ALJ's RFC analysis itself is tainted by far more troubling errors: for example, it totally rejects all subjective evidence based on the finding that Plaintiff lacks credibility, yet provides no reasons for the finding, and it rejects the primary treating physician's opinion based on the lack of objective testing, yet the absence of objective evidence is consistent with the identified impairment.  It also rejects all claimed mental health

---

[11] Making the matter more confusing, the ALJ's Step Four analysis refers to Dr. Alexandre's references to chronic pain and Dr. Rahman's diagnosis of "chronic pain syndrome," and never mentions fibromyalgia.  Tr. at 26-28.

limitations for legally-insufficient reasons, relying entirely on Dr. Carpenter's file review performed before Dr. Alexandre's diagnosis of depression and anxiety disorder, as well as on the lack of evidence that Plaintiff took the medication prescribed to treat anxiety and depression, yet does not include the required analysis of reasons for noncompliance.  20 C.F.R. § 404.1530 (when non-compliance with treatment considered, ALJ must examine whether there is a "good reason" for non-compliance); see Wake v. Comm'r of Soc. Sec., 461 F. App'x 608, 609 (9th Cir. 2011) (failure to comply with treatment for depression may constitute a symptom of illness).

These Step Two errors cannot be swept aside as harmless; they require remand.  See Small v. Astrue, 840 F. Supp. 2d 458, 464-65 (D. Mass. 2012) (in case dealing with fibromyalgia, ALJ's summary dismissal of alleged impairment at Step Two is error because it effectively precluded claimant from relying on impairments related to it at Step Four).

## B.   Error at Step Four

Whether the ALJ was assessing a claimant whose impairment was fibromyalgia, as his Step Two finding states, or the effects of chronic pain syndrome with its related mental health issues, as his Step Four analysis reflects, the linchpin of the RFC determination is the claimant's credibility in describing her perception of pain and its impact on her ability to function.  The ALJ's credibility finding is so brief that it can be set out in its entirety:

> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment [to perform the full range of light work].

Tr. 27.  There are no reasons stated, there is no reference to evidence in the record, there is no description of the weight afforded to Plaintiff's statements.  The insufficiency of the credibility finding is enough to require that this case be remanded.

When the impairment is fibromyalgia, the First Circuit has recognized that it is a syndrome in which "[t]he musculoskeletal and neurological examinations are normal . . . , and there are no laboratory abnormalities." Johnson, 597 F.3d at 410.  In fibromyalgia cases, "the need to adequately justify the credibility determination is particularly important because subjective complaints play such an important role in diagnosing and treating the condition." Miracle v. Astrue, No. 11-163-DLB, 2012 WL 137867, at *4 (E.D. Ky. Jan. 18, 2012); see also Brown v. Astrue, No. 09-40211-FDS, 2011 WL 3421556, at *6 (D. Mass. Aug. 3, 2011). Similarly, if the impairment is chronic pain syndrome, the evaluation of pain symptoms "requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects."  SSR 96-7p, 1996 WL 374186, at *1; see also Avery, 797 F.2d at 21.  The criticality of the credibility finding in this case is confirmed by one of the hypotheticals posed to the vocational expert – when asked to assume that Plaintiff was credible, he replied that there would be no work.  Tr. 74.

The ALJ's bare bones dismissal of Plaintiff's credibility is legal error.  Foote, 67 F.3d at 1562 ("the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding"); Rohrberg, 26 F. Supp. 2d at 309.  An adverse credibility determination must include specific and adequate reasons for rejecting Plaintiff's self-reported claims of pain and limitations.  Auger v. Astrue, CA 09-622S, 2011 WL 846864, at *8 (D.R.I. Feb. 3, 2011) (ALJ must articulate specific and adequate reasons to discredit claimant's allegations); SSR 96-7p, 1996 WL 374186, at *2 ("determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight").

The ALJ's legally-insufficient credibility assessment infected his evaluation of treating physician Dr. Alexandre's opinion regarding Plaintiff's functional limitations.  Tr. 27.  When an ALJ adopts fibromyalgia as the "impairment," he must "conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms."  Johnson, 597 F.3d at 414.  Thus, it was error to reject Dr. Alexandre's opinion because it was inconsistent with "objective medical evidence."  Tr. 27-28.  Reliance on the lack of "objective medical evidence" is not a legally "good reason," 20 C.F.R. §§ 404.1527(c), 416.927(c), to reject an opinion on limitations caused by subjective symptoms.  See Ferreira v. Astrue, CA 10-425 S, 2012 WL 1986311, at *4 (D.R.I. Mar. 27, 2012) (ALJ minimized effects of subjective impairment "due to a lack of objective findings.  This he cannot do.").  Similarly, claims regarding pain may not be disregarded solely because they are not substantiated by objective medical evidence.  SSR 96-7p, 1996 WL 374186, at *1.

Once he rejected Dr. Alexandre's opinion on Plaintiff's physical and mental limitations for legally-insufficient reasons, the ALJ had to sift through the record himself to craft an RFC because Dr. Alexandre is the only medical source opining on Plaintiff's limitations.  That alone is not error.  20 C.F.R. §§ 404.1545-1546; SSR 96–5p, 1996 WL 374183, at *5 (determination that claimant can return to full time work reserved to Commissioner).  However, the conclusion that Plaintiff could do light work seems to have been based largely on snippets pulled from Dr. Rahman's opinion, none of which are legally adequate as the foundation for an RFC.  For example, the ALJ relied on Dr. Rahman's recommendation of regular exercise; this is a legally-insufficient basis for an RFC finding where there is no indication of the level of exercise recommended and low impact exercise is a common treatment for fibromyalgia.  See Johnson,

25

597 F.3d at 412 (recommendation for aerobic exercise not inconsistent with claimed limited physical abilities).  Similarly, the ALJ seemed to rely heavily on Dr. Rahman's recommendation that Plaintiff return to work; while this comment is not immaterial, it is insufficient for an RFC determination because Dr. Rahman offered no opinion on Plaintiff's functional limitations.  See Hattig v. Colvin, No. C12-4092-MWB, 2013 WL 5211523, at *7-8 (N.D. Iowa Sept. 16, 2013); Senanefes v. Astrue, No. 4:10CV2157, 2012 WL 2576399, at *9 (N.D. Ohio July 3, 2012).

It is tempting to label these errors as harmless with a record loaded with examples of inconsistent and potentially false statements by Plaintiff about her symptoms.  See, e.g.,  Tr. 291, 298-99, 300, 303, 410, 412, 449, 475, 483, 499, 510 (claims of inability to camp or have sex belied by medical evidence); Tr. 467 (claim of inability to exercise belied by medical record); Tr. 283, 334-35, 480 (claim of pinched nerve and carpal tunnel syndrome belied by medical evidence); Tr. 45 (claim of migraines belied by medical evidence).  Further, this record has ample evidence of circumstances that could be seen as proof of malingering.  See, e.g., David v. Astrue, CA 10-314M, 2011 WL 2837509, at *11 (D.R.I. June 17, 2011) (credibility properly discounted when plaintiff's reported pain symptoms dramatically increased after disability claim denied); Canedy v. Astrue, No. 09-0588-CT, 2009 WL 2872915, at *4 (C.D. Cal. Sept. 2, 2009) (ALJ may infer symptoms not as severe as alleged in light of plaintiff's failure to accept treatment); Valley v. Barnhart, No. 02-338-M, 2003 WL 22249863, at *5-6 (D.N.H. Sept. 30, 2003) (failure to comply with physician's recommendations, including diet and exercise, supports that claimant is malingerer); SSR 96-7p, 1996 WL 374186, at *5, *7 (failure to pursue follow-up treatment or take prescribed medication is pertinent to credibility; observations by SSA personnel who interviewed individual are pertinent to credibility).  Overall, her testimony seems to confirm that she is motivated by the hope for the label of "disabled," rather than by the

hope to recover by engaging in the challenging physical therapy, mental health treatment, exercise and activities that her doctors recommend.  Tr. 71; see Ortiz, 955 F.2d at 770 (disability entitlement requires evidence that treatment would not restore ability to work).  With a reasoned adverse credibility determination, the ALJ might have ample reason to afford limited weight to Dr. Alexandre's opinion, particularly where the physical limitations she identified seem based on unquestioning acceptance of Plaintiff's statements and the mental limitations listed seem to come, at least in part, from a psychological evaluation that does not exist.  See Willimon v. Astrue, No. 3:08-CV-1235-J-JRK, 2010 WL 1252152, at *6 (M.D. Fla. Mar. 26, 2010); Ulloa v. Barnhart, 419 F. Supp. 2d 1027, 1037 (N.D. Ill. 2006); Colavito v. Apfel, 75 F. Supp. 2d 385, 399 (E.D. Pa. 1999); Connor v. Shalala, 900 F. Supp. 994, 1002 (N.D. Ill. 1995).

While it might seem unnecessary to remand a case when the Court can concoct its own reasons to come to the same result as that reached by the ALJ's flawed decision, it is not the function of this Court to replace the ALJ.  Sargent, 2012 WL 5413132, at *9.  The ALJ's decision should be judged on his own rationale and this Court should refrain from providing post-hoc support.  Drew v. Astrue, No. 09-363-B-W, 2010 WL 1946335, at *3 (D. Me. May 12, 2010).  The Court's role is to determine if the ALJ's decision is legally correct and supported by substantial evidence; when the ALJ leaves the Court with essentially nothing to review, the error is not harmless.  Lyons, 2012 WL 5899326, at *6-7 (ALJ must provide sufficient detail to allow court to understand findings; error not harmless when ALJ fails to explain reasoning); Sargent, 2012 WL 5413132, at *9 (court should not substitute its evaluation for that of ALJ).  Such error is particularly prejudicial when the credibility determination is a vital piece of the puzzle and therefore critical to the outcome of the case.  DiRocco v. Astrue, No. 09-094S, 2010 WL 1490827, at *11 (D.R.I. Jan. 14, 2010).

27

Because the ALJ's decision fails to make a legally-sufficient determination of credibility, fails to supply legally-adequate reasons for rejecting the opinion of the primary treating physician and fails to rely on substantial evidence for his RFC determination, the case should be remanded.

### C.      Confusion at the Hearing

Because of Hurricane Irene, the ALJ, Plaintiff and her counsel were together in Boston at the hearing, but the vocational expert testified by telephone from his home.  Tr. 36.  Plaintiff now contends that some of her testimony is "lost" because the connection was broken for approximately ten minutes, presumably due to the storm.  ECF No. 10-1 at 23.  She does not specify what was lost and review of the transcript belies the claim: for example, just before the hearing monitor interrupted to report a problem, Plaintiff said pushing a vacuum is like pushing a lawnmower, Tr. 58, while right after, when asked to repeat her answer, she says again that the vacuum feels like a lawnmower, Tr. at 60.  In any event, Plaintiff and her counsel were present continuously; she is therefore well able to say whether the transcript is materially incomplete. Plaintiff does not point to any specific omissions or other prejudice arising from these circumstances; instead, she speculates, somewhat illogically, that the "lost" testimony might be the reason for the ALJ's exceptionally-brief decision.  With no concrete flaws in the transcript and no prejudice, remand based on the claim of "lost testimony" is unnecessary.  Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (prejudice based on truncated hearing must be shown before remand for reconsideration); but see Betancourt v. Astrue, 824 F. Supp. 2d 211, 217 (D. Mass. 2011) (deliberate decision by ALJ to have critical information discussed off-the-record requires remand).

Plaintiff also argues that she was surprised that the hearing monitor was connected by videoconference from New Bedford, while the vocational expert testified by telephone, inconsistently with her prehearing request for an in-person hearing.  If Plaintiff believed she was prejudiced by the physical absence of the hearing monitor and the vocational expert, or any of the other confusion caused by the storm, the time to make the objection was at the hearing.  See Cupp v. Astrue, CIVA09-177-GWU, 2010 WL 1038204, at *6 (E.D. Ky. Mar. 18, 2010) (procedural objections should be made at the time of hearing).  By failing to object then, Plaintiff waived the right to claim error now.  See Greene v. Astrue, 5:12-CV-00242-MP-EMT, 2013 WL 5434634, at *8 (N.D. Fla. Sept. 27, 2013) (procedural objection deemed waived when not raised in administrative hearing).

## VIII.   Conclusion

I recommend that Plaintiff's Motion to Reverse or Remand Commissioner's Decision (ECF No. 10) be GRANTED, that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be DENIED and that final judgment enter in favor of Plaintiff. The matters should be REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation pursuant to Sentence Four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and of the right to appeal the Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 17, 2014